## Griffith *vs.* Griffith and others.

Where issues had been framed under the act of 1838, to regulate the trial by jury and the taking of testimony in chancery, and where the verdict of the jury, upon such issues, in connection with the admissions in the pleadings, did not establish all the material facts with sufficient certainty to enable the court to decide the case upon its merits; *Held*, that no decree could be made in the cause until the disputed facts had been ascertained, by the verdict of a jury, upon new issues to be framed for that purpose.

The verdict of the jury, upon issues framed under the act of 1838, is conclusive as to the fact found by the jury, unless a new trial of the issues is granted by the court of law in which such issues were tried.

A purchaser who is himself chargeable with notice of the equitable claim of a third person to the premises purchased, may protect his title by showing that his grantor was a bona fide purchaser without notice.

Where the purchaser employs an attorney to examine the title to the prem-

ises which he is about to purchase, notice to the attorney of the equitable claim of a third person to such premises is constructive notice to such purchaser.

THIS was an appeal from a decree of the assistant vice chancellor of the first circuit, dismissing the complainant's supplemental bill, with costs, as against the defendants Nash & Keyser ; and directing the receiver to pay over to them the rents and profits of the premises in controversy between the complainant and these defendants. The facts upon which the decree of the assistant vice chancellor was based are stated in the report of the case before him. (1 *Hoff. Ch. Rep.* 153.)

*J. Leveridge & W. Silliman*, for the appellant.

*J. W. Merritt & J. Anthon*, for the respondents.

THE CHANCELLOR. This case came before the court below upon the pleadings, and upon the verdict of a jury upon the issues framed under the act of April, 1838, to regulate the trial by jury and the taking of testimony in chancery. While that act was in force no testimony could be taken in suits in this court, except by the consent of parties, where issues of fact suitable for the determination of a jury could be framed upon the material points in the case. And where the issues framed under that act, and the verdict of the jury, in connection with the matters admitted in the pleadings between the parties, do not establish all the material facts with sufficient certainty to enable the court to decide the case upon its merits, no decree can be made until such disputed facts are all ascertained by the verdict of a jury, upon new issues.

The assistant vice chancellor was unquestionably right in supposing that the original bill, if it was seen by Wheaton, the counsel of Nash & Keyser, in his examination of the title upon their purchase, was not of itself sufficient to apprise him and his clients that the complainant had any claim upon the two lots in controversy with these respon-

dents.  To have made such a bill constructive notice to a
purchaser from the defendant therein, it would have been
necessary to allege therein that these particular lots, or
that all the real estate of the defendant in the city of New-
York, had been purchased and paid for, either wholly or
in part, with the funds of the infant complainant.  Or some
other charge of a similar nature should have been inserted
in the bill, to enable purchasers by an examination of the
bill itself to see that the complainant claimed the right to,
or some equitable interest in, or lien on, the premises.  If
the jury, therefore, had merely found that the counsel of
the defendants had notice of the filing of the bill against
Griffith, at the time of their purchase, it clearly would not
have been sufficient to put them upon inquiry whether any
claim was intended to be made to these lots.  But the
charge in the supplemental bill is, that before that purchase
further proceedings had been had in that suit, by a petition
and an order to appoint a receiver of these lots, as property
purchased by the defendant with the funds and property of
the infant complainant, and that Wheaton was well ac-
quainted with those proceedings.  And the jury have found
that before the purchase of the respondents, Wheaton, their
attorney and counsel, was informed not only of the filing
of the original bill but also that these two lots were the
subject of litigation in chancery.  If so, this was certainly
good constructive notice of the complainant's claim, and
sufficient to put Wheaton and his clients upon inquiry as to
the validity of that claim, before they completed their pur-
chase.  And if they purchased or paid their money and
took the conveyance after such notice, they are not entitled
to claim protection, against the previous equitable rights of
the complainants, as bona fide purchasers without notice.
Such I understand from the report to have been the opinion
of the assistant vice chancellor, upon the finding of the jury
on that issue ; the correctness of which finding this court
has not the power to inquire into, under the act of April
1838, which required the issues to be framed.  (*Laws of*
*1838, p. 244, § 3.*)

His Honor, however, based his decision, in favor of the respondents, upon the ground that Henderson, from whom they purchased, was a previous bona fide purchaser without notice. The answer of the respondents, I think, was sufficient to set up this defence of a bona fide purchase by their grantor. It is well settled that a defendant who is himself chargeable with actual or constructive notice of the complainant's equitable claim, at the time of his own purchase of the premises, may nevertheless protect his title by showing that his grantor was a bona fide purchaser without notice. And as it would be impossible for him, in a sworn answer, to state as a fact within his own knowledge that his grantor had no actual or constructive notice of the complainant's claim at the time of the purchase, he must, from the necessity of the case, be permitted to set up that defence, either in his answer or by his plea, upon information and belief merely ; leaving the fact of such bona fide purchase to be determined afterwards, by the proofs of the parties in the cause.

Though this defence was sufficiently set up in the answer, the assistant vice chancellor appears to have overlooked the fact that an answer on oath was waived, so that the answer of the respondents was not evidence of the fact. And as no issues were framed upon this allegation in the answer, neither party has had an opportunity to produce any proofs either to sustain or to disprove that allegation. Until that is done, it is impossible for the court to say whether Henderson was or was not a bona fide purchaser for a valuable consideration and without notice. If the complainant had admitted in his bill the giving of the deed to Henderson, at the time stated, and had then failed in showing that the respondents had constructive notice of his own claim, by the notice to their attorney and counsel who was employed to examine the title when they purchased from Henderson, the cause might have been finally disposed of without inquiring as to the fact of the bona fides of Henderson's purchase from the defendant Griffith, who had bought the premises with the money of his infant son ; and

who therefore held them for him by virtue of the resulting trust. But the appellant having succeeded in showing that the respondents were not entitled to protection as bona fide purchasers by virtue of their own purchase, the assistant vice chancellor, instead of making a decree in favor of either party upon the facts settled by the verdict of the jury, should have directed further issues to be tried, for the purpose of deciding matters of fact not settled by the pleadings or by the verdict ; which matters ought to have formed a part of the issues sent to the former jury to be tried.

Although the supplemental bill states that the respondents, in their petition to the vice chancellor, alleged that the defendant Griffith conveyed the premises in controversy to Henderson, by a deed bearing date about the 4th of November, 1835, I have not been able to find any admission in the bill, even by implication, that such a deed was ever executed and delivered to Henderson before the conveyance from him to Nash & Keyser. On the contrary, the supposed deed, mentioned in the petition, is throughout the supplemental bill referred to in terms which clearly indicate that the complainant did not intend to admit that any such conveyance from the defendant Griffith to Henderson had ever been executed. For it is referred to as " the said supposed conveyance." And is also mentioned hypothetically, thus : " The pretended conveyance above mentioned, if any such was made, was made for the express purpose of withdrawing the property," &c. Or, in this form : " If he took any conveyance for the same, said conveyance was taken with full knowledge," &c. The answer of the defendants likewise admits that the deed to Henderson was not dated on or about the 4th of November, 1835, as stated in the petition ; but that by mistake it was executed without date, although it was acknowledged by the grantor on that day. The burthen of proving the execution of such a deed was therefore cast upon the defendants, who claimed through the same. And as the giving of that conveyance, as well as the good faith with

which it was executed, and the consideration of the deed, were all put in issue by the replication to the answer, the master, in framing the issues to be tried by the jury, should have presented all these questions distinctly for their consideration and decision, as matters of fact. Upon this view of the case, it would be impossible to sustain the decree appealed from, even if the fact was established that Nash & Keyser were bona fide purchasers from Henderson, without notice of the complainants' equitable rights, either actual or constructive, by their counsel, or otherwise. For to sustain their claim to protection as bona fide purchasers, it is necessary for them to establish the fact that the legal title had actually passed from the defendant Griffith to Henderson, previous to their purchase from the latter; so as to vest the legal title in them, by the subsequent conveyance from Henderson.

So much of the decree of the assistant vice chancellor as is appealed from must, therefore, be reversed. And further issues must be framed for the decision of the jury; to the end that when those issues shall have been disposed of, such decree may be made between the parties to this appeal as may be just, upon the facts already ascertained and upon the verdict of the jury upon the new issues.

It might perhaps be a saving of time and expense to the parties if it was in the power of the court to direct further proof to be taken in the cause, in the usual way, to determine the facts put in issue by the pleadings and not disposed of· by the former verdict. But, upon reference to the repealing act of 1839, I find that the act, to regulate the trial by jury and the taking of testimony in chancery, as it originally passed, is still in full force as to all suits in which the court had directed an issue, under that act, previous to the 2d of May, 1839. (*Laws of* 1839, *p.* 292, § 1.) The additional issues, which should have been settled by the master under the former order, must therefore be tried in the same court in which the other issues were tried. And if either party is dissatisfied with the finding of the jury upon such issues, application must be made to

that court for a new trial, or the finding of the jury will be conclusive as to the facts found, under the provisions of the act of 1838. I see no necessity for re-trying the issues which have already been passed upon by the jury; and it is even doubtful whether this court has the power to direct such a re-trial, under the act last referred to. But to prevent any question which may hereafter arise as to whether the execution of the deed from Henderson to Nash & Keyser is sufficiently admitted, by the bill, to authorize this court to dispense with proof thereof, an issue may be framed upon the fact of the execution of such deed as stated in the answer of the defendants; if either party thinks proper to have such an issue, to enable the respondents to prove the deed, or to produce the same, or the record thereof, duly proved or acknowledged, on the trial before the jury. The proceedings must be remitted to the vice chancellor of the first circuit, with directions to master Codwise to frame such additional issues as may be necessary to dispose of all the questions in controversy, between the parties to this appeal, which arise upon these pleadings and which are not already disposed of by the finding of the jury upon the former issues; with the right to either party to except to the decision of the master if dissatisfied with the same. And when such issues shall have been settled and the master's report thereon confirmed, they are to be tried in the same court in which the former issues were tried; and when such issues have been disposed of in that court, either party is at liberty to bring the cause to hearing before the vice chancellor of the first circuit, for a decision as to the rights of these parties, and as to the general costs in the cause upon the supplemental bill.

Both parties were equally in fault in neglecting to have all proper issues settled and referred to the jury in the first instance, and in bringing the cause on to be heard before the assistant vice chancellor in its present imperfect state, in which it was impossible to settle the question in controversy between them. Neither party, therefore, is to have costs as against the other, either upon this appeal or upon

such useless hearing in the court below. All other questions of costs are reserved until the hearing, after the trial of the new issues in the cause.