THE LACUSTRINE FERTILIZER COMPANY, Appellant, *v.* THE LAKE GUANO AND FERTILIZER COMPANY et al., Respondents.

Soil removed from the land of one person and placed on the land of another, with his consent, and without an intention on the part of the former to reclaim it, or any agreement authorizing him to remove it, becomes a part of the land of the latter.

The owner of land cannot, as a general rule, by agreement between himself and another, make that which is a part of the realty, personal property as against a subsequent purchaser of the land for value without notice, there having been no actual severance when the subsequent grant was made.

The doctrine of constructive severance cannot be applied to defeat the rights of such subsequent purchasers, under the recording acts.

*It seems* that it is not essential under the Code in case of a disputed title to land, that the title be determined by legal action before the court will interfere by injunction to restrain alleged trespasses by one of the parties.

In excavating a channel through the farm of T., to turn the waters of a river for canal purposes, a deposit of marl was struck, which was excavated and deposited on the banks of the cut, where it remained for over twelve years, when T. sold and conveyed his farm to S. The deed contained an exception of the said beds or deposits of marl, and an agreement that the marl might remain on the land for ten years and that the grantor might, at any time within that period, "remove a part or the whole of said marl." *Held*, that when the conveyance was made, the marl was a part of the soil of the farm of T., and this without regard to the question whether or not the State, before cutting the channel, had acquired title to the land through which it was excavated; that the exception in the deed was of an interest in the land, terminable on the expiration of the ten years, and if the right of removal was not exercised within that period, the grantee held, relieved of the burden of the exception, and as absolute owner.

T., by instrument under seal conveyed the beds of marl to B. with covenant of warranty and without limitation as to time of removal. Thereafter, T. reacquired title to the farm. The conveyance to B. was not recorded. *Held*, that the marl did not become personalty by force of the conveyance; that it was void as against a subsequent grantee of the farm, who purchased, after the expiration of the ten years, in good faith, for a valuable consideration without knowledge; that the exception in the deed was not constructive notice, as the right reserved to T. had expired, and even if the ten years had not elapsed when T. repurchased, the right, save for the grant to B., was merged in the fee then acquired.

Also, *held*, that a purchaser from said grantee stood in the place of the

latter and was entitled to the protection of the recording act, although he purchased with notice of the interest of B.

A deed acknowledging the payment of the purchase-money is *prima facie* evidence that the grantee was a purchaser in good faith, for a valuable consideration within the recording act.

Plaintiff, who claimed title under the conveyance of the marl from T. to B., brought this action against defendant, who claimed under a deed of the farm from the heirs of T., to restrain the removal of the marl. It appeared that a suit in replevin was pending between the parties when this action was commenced, wherein the title to the marl was in question. *Held*, that the court below could, in its discretion, refuse to entertain this action until after the pending action was determined.

(Argued September 21, 1880 ; decided November 9, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendants entered upon an order dismissing plaintiff's complaint on trial. (Reported below, 19 Hun, 47.)

This action was brought to restrain the defendants from removing or in any way interfering with certain beds or deposits of marl upon lands owned by the corporation defendant.

The facts are sufficiently stated in the opinion.

*Adolphus D. Pape* for appellant. The marl was personal property and could not be claimed to be a part of the realty. (*Mott* v. *Palmer*, 1 Comst. 564; *Smith* v. *Benson*, 1 Hill, 176; *Smith* v. *Jenks*, 1 Denio, 580; *Austin* v. *Sawyer*, 9 Cow. 40; *Whipple* v. *Foote*, 2 Johns. 422; Ewell on Fixtures, 45; Hill on Fixtures, § 1; *Warren* v. *Leland*, 2 Barb. 613; *Burke* v. *Hollis*, 98 Mass. 55; *French* v. *Freeman*, 43 Vt 93; *Yale* v. *Seeley*, 15 id. 221; *Lykens Valley Coal Co.* v. *Dock*, 62 Penn. St. 232; *Walker* v. *Sherman*, 20 Wend. 636; *Stewart* v. *Dougherty*, 9 Johns. 108; *Sheldon* v. *Edwards*, 35 N. Y. 279; *Bank of Lansingburgh* v. *Crary*, 1 Barb. 542; *Davis* v. *Emrey*, 61 Me. 140; *Hoyt* v. *Stranton Mills*, 54 N. H. 110; *Sterling* v. *Baldwin*, 42 Vt. 306, 310; 1 Schouler on Personal Property, 86; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 645; *State* v. *Pottmeyer*, 33 Ind. 402; *Wilgus* v. *Getting*, 21 Iowa, 177.) Torrey having conveyed to Barnum, with a warranty, and once

more becoming the owner of the fee of the land, with the piles of marl on it and attached to it, he was estopped from denying Barnum's title. (Bigelow on Estoppel, 289; *Nicholson* v. *Halsey*, 1 Johns. Ch. 417; *Ex parte DeKay*, 4 Paige, 403; *Mosely* v. *Mosely*, 15 N. H. 334; *Jackson* v. *Bush*, 10 Johns. 223; *Jackson* v. *Humrun*, id. 292.) Barnum had the right to assume that the owner of the land did not object to his marl remaining there until he was notified to the contrary. (*Gregg* v. *Birdsall*, 35 How. 345.) Plaintiff was entitled to an injunction. (*Hast & Hugh* v. *The Mayor*, 3 Paige, 213.) Plaintiff's title is not doubtful, and even if it was, it has a right to come into a court of equity for relief. (*Livingston* v. *Livingston*, 6 Johns. Ch. 497; *The Mohawk & Hud. R. R. R. Co.* v. *Artchen*, 6 Paige, 83; *Spear* v. *Cutter*, 5 Barb. 486; *Eskridge* v. *Eskridge*, 51 Miss. 522; *Corning* v. *Troy Iron and Nail Factory*, 40 N. Y. 191; *Bronstedt* v. *South Side R. R. Co.*, 55 id. 250; *West Point Iron Co.* v. *Reymert*, 45 id. 703; *N. F. T. B. Co.* v. *G. W. R. Co.*, 39 Barb. 225; *Howard* v. *Ellis*, 4 Sandf. 369; *Hodge* v. *Lambert*, 2 Bosw. 570; 2 Story's Eq. Jur., § 928; *Pollitt* v. *Long*, 58 Barb. 20; *Foote* v. *Morgan Linck*, 5 McLean, 616; *Mitchell* v. *Dorrs*, 6 Ves. 147.)

*Samuel Hand* for respondents. The property claimed by plaintiff as "bed or beds of marl" is, and always has been, real estate. (*Blewitt* v. *Tregonning*, 3 Ad. & Ellis, 554; Eng. Com. Law, 260; 30 id. 269, 270; *Dearden* v. *Evans*, 5 Meeson & Welsby, 11; *Wintermute* v. *Light*, 46 Barb. 278; Tyler on Fixtures, 104, 105; *Miller* v. *Plumb*, 6 Cow. 665; *Snedeker* v. *Waning*, 12 N. Y. 170; *Goodrich* v. *Jones*, 2 Hill, 142; *Middlebrook* v. *Corwin*, 15 Wend. 169; 3 Wash. on Real Prop. 59; *Bishop* v. *Bishop*, 12 N. Y. 123; *Evans* v. *Turnbull*, 2 Johns. 313; 2 Kent's Com. 360–361, cited in Tyler on Fixtures, 92; *Fryatt* v. *The Sullivan Company*, 5 Hill, 116–118 [affirmed, 7 id. 529]; *Bracket* v. *Goddard*, 54 Me. 309; *Livingston* v. *Reynolds*, 2 Hill, 157; *Huntley* v. *Russell*, 13 Q. B. 591.) To make soil personal property it must

be clearly and distinctly separated from the land by the owner, with that intent, at the time of the separation. (*Lampton* v. *Preston*, 1 J. J. Marsh. [Ky.] 454; Tyler on Fixtures, 115.) The exception in Torrey's deed to Spaulding, from which plaintiff claims title, was but a license to enter and remove certain parts of soil, the rights under which were to expire at the end of ten years, or sooner in case of Torrey's death. (3 Wash. on Real Prop. [3d ed.] 369, 371, 377; *Cunningham* v. *Knight*, 1 Barb. 399; *Craig* v. *Wells*, 11 N. Y. 315; *Lacustrine Fertilizer Co.* v. *Stilwell*, 52 How. 152; 1 R. S. 749, § 1, and N. Y. Stat. at Large, 699; 3 Johns. 387; 8 id. 394–400; *Boss* v. *Empie*, 5 N. Y. 33–40; *Ives* v. *Van Auken*, 34 Barb. 566; 1 R. S. 143, 639, 739; 1 N. Y. Stat. at Large.) The interest reserved by the exception in Torrey's deed was and is but a license. (1 Wash. on Real Prop. 542; 3 id. [3d ed.] 376; *Rich* v. *Zieldorf*, 22 Wis. 519; *McIntyre* v. *Bernard*, 1 Sandf. Ch. 52; *Reed* v. *Merrifield*, 10 Metc. 159; *Pease* v. *Gibson*, 6 Greenl. 81; *Kellam* v. *McKinstry*, 69 N. Y. 264.) The interest or right secured by the exception in Torrey's deed, if an exception, was void for uncertainty. (3 Wash. on Real Prop. [3d ed.] 344, 37, side page 629, also p. 350, § 39.) The doctrine of estoppel predicated upon covenants of warranty does not aid plaintiff's title. (*Jackson* v. *Hoffman*, 9 Cow. 271, 273; *Wight* v. *Shaw*, 5 Cush. 56; 3 Wash. on Real. Prop. [3d ed.] 382; *Cole* v. *Raymond*, 9 Gray, 217; 3 Wash. on Real Prop. [4th ed.] 328, 466–7; *White* v. *Patten*, 24 Pick. 324; *In Doe d. Potts* v. *Dawdall*, 3 Houst. [Del.] 369; 11 Am. Rep. 765; *Calder* v. *Chapman*, 52 Penn. St. 359; *Wood* v. *Chapin*, 3 Kern. 509; *Griffith* v. *Griffith*, 9 Paige, 315; *Webster* v. *Van Steenberg*, 46 Barb. 211; 2 N. Y. Stat. 713, § 6.) By the foreclosure of the Spaulding mortgage Torrey extinguished any estate or interest that might have been created by the exception in his deed or his attempted deed to Barnum. (3 Wash. on Real Prop. [4th ed.] 328.) Plaintiff was estopped by the admissions of Pierson. (Herman's Law of Estoppel, 337, 338.) The plaintiff is not entitled to an injunction in any view of the case. (*Heywood* v. *Buffalo*, 14

N. Y. 540; *Mann* v. *Fairchild*, 2 Keyes, 111; *Bradley* v. *Aldrich*, 40 N. Y. 504; 2 Wait's Pr. 6.)

ANDREWS, J. The marl, the subject of this controversy, was excavated by the State, between the years 1851 and 1853, in making a channel to turn the water of the Canandaigua river for canal purposes, through lands then owned by one Torrey. The marl underlaid a stratum of muck about four feet in depth, and in removing the soil for the excavation, the muck was thrown out, and the underlying marl was afterward excavated and deposited over the muck on the banks of the cut. The mounds of earth made by the deposit remained undisturbed until 1865. They were covered with annual growths of grass and weeds, and in that year potatoes were planted in the soil formed thereby. Torrey remained the owner of the land until the 6th of January, 1865, when he conveyed his farm, including the land on which the marl had been deposited, to one Spaulding, by warranty deed, containing this exception : "Excepting the beds or deposit of marl on both banks of the Canandaigua river, which passes through said land ; and it is an express stipulation and agreement between the parties hereto that the said marl may remain on said land for a period of ten years from the date of this indenture, and that the party of the first part may, at any time, within said ten years, remove a part or the whole of said marl."

When this conveyance was made, the marl was a part of Torrey's land. It was a part of the soil when excavated, and its character as land was not changed by reason of its displacement from the bed it originally occupied, and its deposit on the other land of Torrey. It was not deposited with a view to removal. The value of the marl as a fertilizer was not known until about the time of Torrey's conveyance to Spaulding. It was not severed from the land, as timber trees cut by the owner, or as coal or minerals mined and deposited on the surface, with a view to a sale as chattels. By the deposit it became incorporated with and a part of the

soil where it was deposited, and after as before the deposit it was a part of Torrey's freehold. It does not appear that the State, before cutting the channel, had acquired title to the land through which it was made. But if that fact had been shown it would not, we think, have changed the conclusion that the marl, when deposited, became a part of the land on which it was placed. Soil removed from the land of one person and placed on the land of another by his consent, without any intention on the part of the former to reclaim it, or any agreement authorizing him to remove it, becomes a part of the land of the latter. In *Blewett* v. *Tregonning* (3 Ad. & El. 554), the plaintiff sued the defendant in trespass for taking sand from his close. The defendant pleaded that the sand drifted on to the plaintiff's close from the sea-shore, and that, by custom, the defendant was entitled to the sand for manuring his own soil. The alleged custom was held to be void, and PATTESON, J., said: "I am of opinion that when any thing in the nature of soil is blown or lodged upon a man's close, it is a part of his close, and he has a right to it against all the world." It can, we think, make no difference whether, by avulsion or alluvion, or other action of the elements, the soil of one person is transferred to the land of another, or is placed there by the voluntary act of the former owner, with the consent of the other party, with the intention of leaving it there permanently. (See, also, *Dearden* v. *Evans*, 5 M. & W. 11.)

The marl being then a part of the realty, at the time of the conveyance to Spaulding the question arises as to the effect of the exception in Torrey's deed. The exception was of a part of the soil, viz.: the "beds of marl," with the right in the grantor to remove them within ten years from the date of the deed. The title to the land on which the marl was deposited was not excepted from the conveyance. It was like an exception by a grantor of the timber trees growing on the land granted, with the right of removal within a fixed period. The position and rights of Torrey under this deed were, we think, precisely similar to what they would have been, if Spaulding had owned the land, and had granted to Torrey the

beds of marl, with the same right of removal as is contained in Torrey's deed. The exception was of an interest in the land conveyed, but it was an interest terminable at the expiration of the ten years. It was in legal effect a reservation to Torrey of so much of the marl as he should remove from the premises within that time. If the right of removal was not exercised within the time limited, the right was gone, and Torrey's grantee would thereafter hold the land and the marl, relieved from the burden created by the exception. In *McIntyre* v. *Barnard* (1 Sandf. Ch. 52), an instrument was executed in 1836, by which M. granted, bargained and sold to C. and H. all the pine timber standing on certain land, *habendum* to them, their heirs, etc., together with the right of entering upon the land until January 1, 1841, to cut and remove the timber, and the Vice-Chancellor held that it was a grant of all the pine timber which should be removed from the land before the 1st of January, 1841, and that after that day the grantees had no interest or right in the timber then standing on the premises. The same rule was applied to a contract for the sale of timber trees, in *Boisaubin* v. *Reed* (2 Keyes, 323), and in *Kellam* v. *McKinstry* (69 N. Y. 264), to a contract for the sale of bark, to be taken from trees by the vendee. And long before these cases, it was said in Touchstone: " If one grants lands in fee, excepting the trees or any other thing, to the grantee, without saying ' and to his heirs,' by this exception the thing excepted is severed only for the life of the grantee, and then it shall pass with the rest of the thing granted " (page 100).

On the 23d of July, 1866, Torrey, who had meanwhile acquired no new interest in the land, executed to Henry A. Barnum a sealed instrument purporting to grant and convey to him the beds of marl then on the land, *habendum* to him and his heirs forever, containing a covenant to warrant " the sale of said marl " to Barnum, his heirs and assigns. The plaintiff's claim to the marl is derived from Barnum through certain mesne conveyances or transfers of his title from Torrey. Torrey in December, 1869, reacquired title to the premises conveyed

to Spaulding, through the foreclosure of a purchase-money mortgage, executed by Spaulding, on the purchase of the land. Torrey died in 1870, having before his death devised the land, and his devisees in 1874, by deeds duly executed, acknowledged and recorded, conveyed to one Evans. The deeds to Evans express a pecuniary consideration of several hundred dollars, payment of which is acknowledged. There is no evidence that Evans, when he took his deeds, had any notice of the conveyance to Barnum. That instrument was not recorded. Evans was chargeable with notice of the exception in the deed from Torrey to Spaulding, as that deed was on record at the time he took his conveyance. But the right reserved to Torrey thereby, except for the conveyance to Barnum, would have merged in the fee acquired by Torrey on the mortgage sale. The principle was adjudged in *Liford's Case* (11 Rep. 50 *a*): "If a man makes a feoffment in fee of a manor, excepting the trees, and afterward the feoffee buys the trees, they are again made parcel of the inheritance although they were absolutely divided for a time."

Evans when he purchased did not have constructive notice of Barnum's claim. Barnum was not in possession of the land, but the possession, so far as appears, was in accordance with the record title. The deed to Evans, acknowledging the payment by him of the purchase-money, is *prima facie* evidence that he was a purchaser in good faith for a valuable consideration, under the recording act (*Wood* v. *Chapin*, 3 Kern. 509), and the question arises whether the instrument executed by Torrey to Barnum is a conveyance of real estate within the recording act? If it was, then not having been recorded it was, by the express terms of the statute (1 R. S. 756, § 1), void as against Evans, a subsequent purchaser in good faith for a valuable consideration, and the Lake Guano & Shell Fertilizer Company, which has succeeded to his title, stand on the same right, and it is immaterial whether the company or any intermediate grantee from Evans did, or did not, have notice of the conveyance to Barnum when their rights accrued. A purchaser, from one who is protected by the recording acts against a prior unrecorded conveyance, is

himself entitled to such protection, notwithstanding he pur-
chased with notice. (*Wood* v. *Chapin*, *supra ; Griffith* v. *Grif-
fith*, 9 Paige, 315.) I think that the instrument executed by
Torrey to Barnum was a conveyance within the recording act.
By the 38th section (1 R. S. 762), it is declared that the term
"conveyance," as used in that act, "shall be construed to em-
brace every instrument in writing by which any estate or inter-
est in real estate is created, aliened, mortgaged or assigned ; or
by which the title to any real estate may be affected in law or
equity ; except last wills and testaments, leases for a term not
exceeding three years, and executory contracts for the sale or
purchase of lands." In *Green* v. *Armstrong* (1 Den. 550), the
doctrine was finally settled in this State that a contract for the
sale of growing trees is a contract for the sale of an interest in
land, within the statute. Growing trees are not like growing
crops, the product of annual labor and cultivation, which may
be sold by parol and are regarded for most purposes as
chattels. (*Whipple* v. *Foot*, 2 Johns. 422 ; *Austin* v. *Sawyer*,
9 Cow. 40.). The sale of a part of the soil is the sale of
an interest in the land, and must, like the sale of trees, be in
writing.

It is not material, in determining the application of the
recording act, that in analogy to the sale of timber trees, the
marl, *after the conveyance* to Barnum, may have become, on
the doctrine of constructive severance, personal property in the
vendee, which he might sell as such, and which on his death,
without actual severance, would go to his executor. (*Stukeley*
v. *Butler*, Hob. 168.) In the case of timber trees, a sale is
not equivalent to an actual severance, as to all persons. It is
said in *Liford's Case* : "If a tenant in tail sells the trees to
another, now they are a chattel in the vendee and his executors
shall have them, and in such case *fictione juris* they are severed
from the land ; but if tenant in tail dies before actual severance,
they are part of the inheritance and shall go with it, and the
vendee cannot take them, and yet, *quoad* the tenant in tail
himself, they were severed for a time. * * So in the case
at bar, *quoad* the lessee, *fictione juris*, they are divided for a

time; but *quoad* the lessor, and all others, they remain parcel of the inheritance." It would be contrary to the policy of the recording act to construe the sale to Barnum as a sale of personal property on the theory of constructive severance. The statute was intended to protect *bona fide* purchasers for value against unrecorded conveyances of estates, or interests in the land purchased. If the marl became personalty by force of the agreement between Torrey and Barnum, and for that reason is not to be regarded as a conveyance within the recording act, for the same reason the owner of land might convey, by an unrecorded deed, a sand bed, or the coal or minerals thereon, and the conveyance would be good as against a subsequent purchaser for value, of the fee, without notice, although the rights created by the unrecorded instrument might greatly impair, or even destroy, the value of the fee, and leave in the purchaser a mere naked title.

We think it must be a general rule that the owner of land cannot, by agreement between himself and another, make that which in its nature is land, personal property, as against a subsequent purchaser for value, without notice, there having been no actual severance of the subject of the agreement, when the subsequent grant was made, and we are also of opinion that, in the case supposed, the doctrine of constructive severance cannot be applied to defeat the rights of subsequent purchasers under the recording act. The rule that things of a personal nature, annexed to the freehold by a person other than the owner, may, by agreement between him and the owner, retain their character as chattels, and will not pass on a conveyance of the fee, is not applicable. The chattels, in the cases to which the doctrine is applied, were such originally, and never became a part of the land. In *Vorebeck* v. *Roe* (50 Barb. 302), it was held that a contract for the sale *in præsenti* of standing timber was a conveyance within the recording act.

We are of the opinion that upon the case now presented the title to the marl is in the corporation defendant, but the Special Term dismissed the complaint on the ground that the title being disputed, the plaintiffs should have brought a legal action

to try the title before commencing an equitable action for an injunction. It appears that a suit in replevin was pending between the parties, when this action was commenced, involving the title to the marl. We do not understand that it is indispensably necessary, under our present blended system of procedure, that in case of a disputed title to land, the title must be determined by a legal action before the court will interfere by injunction to restrain alleged trespasses by one of the parties. (*Corning* v. *Troy Iron and Nail Factory*, 40 N. Y. 191; *West Point Iron Co.* v. *Reymert*, 45 id. 703; *Broiestedt* v. *South Side R. R. Co.*, 55 id. 220.) But we are of opinion that the Supreme Court in this case could, in its discretion, refuse to entertain the action until after the pending action was determined, and that on that ground alone the judgment below can be upheld.

We have examined the question of title, as counsel for both parties have desired it, and have reached the conclusion stated in the foregoing opinion. But to save the rights of the plaintiff on the question of notice to Evans, of Barnum's deed, a question which may not have been fully litigated on this trial, we put the affirmance of the judgment on the ground that the court had the right, in its discretion, to deny equitable relief, until the pending action had been determined.

The judgment should be affirmed.

All concur.

Judgment affirmed.