JOHN SIMSON, RESPONDENT, *v.* BANK OF COMMERCE, IN BUFFALO, APPELLANT, IMPLEADED WITH JOHN A. BLISS AND OTHERS.

*Delivery of a deed in escrow — when the grantor is estopped from questioning the title of a purchaser in good faith from a grantee who has fraudulently obtained possession of the deed.*

On January 31, 1883, the plaintiff, who was the owner in fee of a lot of land in the city of Buffalo, entered into an agreement with the defendant Bliss, who then occupied the premises as the plaintiff's tenant, to sell and convey the land to Bliss for the sum of $1,000. A deed was made and executed by the plaintiff to Bliss, which was, by agreement, delivered to one Betts, who was to procure a loan for Bliss, and when the loan was made and the $1,000 had been received by Betts, then, and not until then, the deed was to be delivered to Bliss. Thereafter Bliss asked Betts to let him take the deed to show it to the defendant, the Bank of Commerce, from which he was to get a loan. Betts allowed him take the deed to show to the bank. Bliss took the deed to the bank, arranged for the loan, and then, without the knowledge of the plaintiff, caused the same to be recorded in the office of the clerk of Erie county, Subsequently, and on or about March first, Betts made for Bliss an abstract of title, putting therein the conveyance from the plaintiff to Bliss and the record thereof, and subsequently took the certificate of acknowledgment of Bliss and his wife to a mortgage for $20,000, which was executed and delivered to the bank as collateral security for a loan made to Bliss. At the time of taking the mortgage the bank had no knowledge that Bliss had obtained the possession of the deed of the premises by fraud, or that the consideration had not been paid to the plaintiff. The mortgage having been foreclosed, and the property having been bid in by the bank, the plaintiff brought this action to have the unpaid purchase-money declared a lien upon the premises prior to the claim of the bank.

*Held*, that the plaintiff was estopped from questioning the title acquired by the bank.

*Simpson* v. *Del Hoyo* (94 N. Y., 189) followed.

APPEAL from a judgment entered upon the decision of the Erie Special Term, and also from an order denying a motion to vacate a judgment for irregularity.

*M. A. Whitney,* for the appellant.

*B. S. Farrington,* for the respondent.

HAIGHT, J. :

This action was brought to have the unpaid purchase-price of the real estate described in the complaint made a lien thereon prior to the appellant's claim. The facts, as found by the trial court, are in substance as follows : That on the 31st day of January, 1883, the plaintiff was the owner in fee of the land in question and the defendant, Joseph A. Bliss, occupied the land as his tenant ; that on that day the plaintiff entered into an agreement with the defendant, Bliss, to sell and convey to him the land for the sum of $1,000 ; that a deed was made and executed by the plaintiff to Bliss and by agreement was delivered to Benjamin F. Betts to be delivered to Bliss when Bliss should pay the $1,000 ; that Bliss never paid the $1,000, but by false and fraudulent representations made to Betts obtained the possession of the deed without the knowledge of the plaintiff and caused the same to be recorded in the office of the clerk of Erie county, that thereafter and on the 19th of March, 1883, Bliss executed and delivered to the defendant, the Bank of Commerce, a mortgage on the premises for $20,000 as a collateral and continuing security for the payment of all indebtedness that Bliss was owing the bank ; that thereafter the mortgage was foreclosed and the property bid in by the bank ; that at the time of taking the mortgage the bank had no knowledge that Bliss had obtained the possession of the deed of the premises by fraud, or that the consideration had not been paid to the plaintiff.

The defendant excepted to the finding that the deed was obtained by false and fraudulent representations, and requested the court to find that the plaintiff placed the deed in the hands of Betts with authority to make use of the same in procuring a loan upon the property therein described in the name and interest of the grantee as a means of raising the $1,000 purchase-money to be paid the plaintiff when so obtained, and that, after the recording of the deed, and on or about March 1, 1883, Bliss furnished and presented to the bank an abstract of title of the lands and premises described in the complaint which was made by and in the handwriting of Betts which set forth the deed from the plaintiff to Bliss and the recording thereof as aforesaid, and that Bliss then and there made application to the bank for an extension of time and for renewals of divers pieces of commercial paper upon which he was liable as

maker or indorser, and which had been theretofore discounted for his benefit and were held by the bank, which amounted in the aggregate to several thousand dollars, and also for further loans and discounts for which he then and there proposed to give the bank security by way of mortgage upon the land, all of which was assented to by the bank; that on the 1st day of March, 1883, the Bank of Commerce caused a mortgage to be drawn up and prepared, dated on that day, upon the lands described in the complaint for Bliss and wife to execute as a collateral and continuing security to the bank for the payment of all promissory notes or bills of exchange which then had been or which should hereafter be made, drawn, indorsed or accepted by Bliss, and which had theretofore been or should at any time be discounted by the bank for his benefit as the same should become due and payable, and also for the payment, upon demand, of any and all over-drafts, balances of account or sums of money which should at any time be due or owing by him to the bank upon any account whatever, and a mortgage was thereafter and on the 19th day of March, 1883, executed by Bliss and wife and a certificate of acknowledgment thereof was made by the said B. F. Betts as notary public; that after the making and delivery of the mortgage by Bliss to the Bank of Commerce and prior to April 15, 1883, and in good faith, relying upon the security afforded thereby and without any notice of any claim whatever of the plaintiff for or on account of the unpaid purchase-price of the lands and premises, or any question of title thereto in the said Bliss at any time prior thereto, the Bank of Commerce, at the request and for the benefit of Bliss, discounted divers promissory notes made by or indorsed by Bliss amounting in the aggregate to $30,000 and upwards, and advanced the proceeds thereof to Bliss, and advanced to Bliss in money more than sufficient to pay the purchase price of the land in question. These requests to find were refused and the defendant's counsel duly excepted.

The evidence upon the trial is undisputed. The plaintiff testified that when he executed the deed to Bliss that he left it with Betts to fix a loan for Bliss, and when the loan was made Betts was to get the money for him; that the deed was not to be delivered until the money was paid. Betts, who was sworn as a witness for the plaintiff, testified that the deed was left with him for the purpose

of procuring a loan for Bliss, and when procured he was to receive the $1,000 and deliver the deed. He further testified that he was endeavoring to procure a loan for Bliss upon the property; that he met him by appointment in the city of Buffalo, and that Bliss said to him that he thought he could do better with the Bank of Commerce; said he could get the money to pay from them, and a line of discounts that would be worth more to him than the $10,000 Betts proposed to loan; that he wished Betts would. let him take the deed to show to the Bank of Commerce; that thereupon the witness let him take the deed, and that that was the last that he ever saw it. It further appeared that Bliss took the deed to the Bank of Commerce, arranged for the loan, and then left the deed at the county clerk's office to be recorded; that subsequently, and about the first of March, Betts made for Bliss an abstract of title, putting thereon the conveyance from the plaintiff to Bliss, and the record thereof, and subsequently, and on the nineteenth of March, took the certificate of acknowledgment of Bliss and wife to the mortgage given to the bank. It further appeared that the abstract of title so prepared by Betts was delivered to the attorney of the bank, who examined the same and recommended the loan. Whilst there were no false statements made by Bliss to procure the possession of the deed, after procuring it for the purpose of showing the bank, he took it to the clerk's office and caused the same to be recorded, and in doing so violated the arrangement by which he procured it, and perpetrated a fraud upon the plaintiff. As to the requests to find, to which we have alluded, they were all in accordance with the undisputed evidence given and should have been found. The question thus presented is whether or not the plaintiff can recover when the possession of the deed was obtained from him under the circumstances disclosed.

In the case of the *Commercial Bank of Buffalo* v. *Kortright* (22 Wend., 348) one Parker was the owner of a certificate of 100 shares of the stock of the bank. He sent the certificate of stock, together with his promissory note for $10,000, to one Bartow to obtain a loan. Before transmitting the stock he indorsed his name upon it. Bartow, instead of making a loan to Barker upon the security so transmitted to him, negotiated a loan from Kortright, the plaintiff, of $25,000, and then absconded. It was held that the

plaintiff, having made the $25,000 loan in good faith, was protected and had the right to hold the stock until the money was repaid to him. Senator VER PLANCK, in delivering the opinion of the court, says : " Bartow was intrusted with  *  *  *  the usual external *indicia* of the right of disposing of the property. On the faith of these external *indicia* Kortright lent twenty-five thousand dollars upon the aggregate security of this and other stocks. If the law should now hold this transaction to be void, it would indeed, as Judge STORY says, operate as a fraud upon the unsuspecting confidence of the other party."

In the case of *McNeil* v. *The Tenth National Bank of the City of New York* (46 N. Y., 325) the plaintiff was the owner of 134 shares of the stock of the First National Bank of St. Johnsville, the certificate of which he delivered to his stock brokers to secure any balance of account. Upon the certificate was indorsed a blank assignment and power of attorney to transfer, signed by the plaintiff, purporting on its face to have been executed for value received. Plaintiff's indebtedness on the account was $3,000. His brokers, without authority and without his knowledge, pledged the stock, with other securities, to the defendant to secure an advance to themselves of $45,000. It was held that the defendant was entitled to hold the stock for the payment of the amount of the advance.

In the case of *Moore* v. *The Metropolitan National Bank* (55 N.Y., 41) the action was to restrain the defendant from disposing of a certificate of indebtedness of the State of New York for $10,000, issued by the new capitol commissioners, which had been assigned to one Miller, who had transferred the same to the defendant, upon the ground that the assignment to Miller was induced by fraud. The defendant was a *bona fide* purchaser of Miller for value. It was held that the plaintiff, having conferred the apparent ownership upon Miller, and the purchase of the defendant having been made upon the faith of such apparent ownership, the defendant obtained a valid title, as against the plaintiff, and that the plaintiff was estopped from asserting his title.

In the case of *Simpson* v. *Del Hoyo* (94 N. Y., 189), the action was to foreclose a mortgage upon real estate. Mrs. Del Hoyo, the defendant, was induced, by the fraud of Henry M. Lowenstein, to convey real estate to his daughter, Rosa H. Lowenstein, who executed a mortgage thereon to her father. The mortgage in his

hands was void. It was, however, subsequently assigned to the plaintiff, who, acting in good faith, with no knowledge of the fraud, paid value for the same. The answer of the defendant alleged the fraud under which the mortgage was procured. It was held to be no defense as against a purchaser of a mortgage in good faith and for value. (See also *Paddon* v. *Taylor*, 44 N. Y., 371 ; *Smart* v. *Bement*, 4 Abb. Ct. App. Dec., 253 ; *Griffith* v. *Griffith*, 9 Paige, 315–318 ; *Bumpus* v. *Planter*, 1 Johns. Ch., 213 ; *Jarvis* v. *Rogers*, 13 Mass., 105,)

It is a general and familiar rule that the purchaser of a non-negotiable chose in action, takes it subject to all the equities existing between the original parties thereto. But this rule, as we have seen, has its exceptions, and the exception is, where a party has, by his own voluntary act, placed the *indicia* of title in another, the purchaser in good faith, for value, will be protected. In the case under consideration, Simson, of his own voluntary act, executed the deed to Bliss ; he delivered it to Betts, to be delivered to Bliss, upon receiving one thousand dollars. It was understood by him that Betts was to aid Bliss in making a loan. For that purpose Betts let Bliss take the deed to the Bank of Commerce. Thus, through the act of Simpson and of his agent, Betts, Bliss was invested with the *indicia* of title to the premises. He was given the power to procure the deed to be recorded, to deceive the bank and procure a loan upon the premises. It consequently appears to us, that the plaintiff is estopped from questioning the title of the bank. It is contended that this case is distinguishable from the case of *Simpson* v *Del Hoyo* for the reason that there was no delivery of the deed , but in that case the deed was procured through fraud and in this case, as the court has found, the delivery of the deed was procured through fraud. We see no reason why the rule in the one case should not be applied in the other.

The motion to vacate the judgment on the ground of irregularity was properly disposed of and that order should be affirmed, without costs.

As to the judgment, it should be reversed and a new trial granted, costs to abide event.

BRADLEY, J., concurred.

Judgment reversed and new trial ordered, costs to abide event.