MARGARET SLATTERY, Respondent, *v.* ALBERT F. SCHWANNECKE and GEORGE HEWLETT, Appellants.

*Sale on foreclosure — a purchaser acquires all the rights of the mortgagor — when a mortgagee purchasing at a sale and conveying the land to a bona fide purchaser will be compelled to account to the holder of an unrecorded deed who was not made a party to the foreclosure action — the effect of filing a lis pendens is avoided by proof of notice of the unrecorded deed — what evidence is required to charge a client with notice of facts known to his attorney.*

By the judgment entered in this action the plaintiff was declared entitled to redeem certain premises in the city of New York from a mortgage executed by one Decker, on December 13, 1877, to one Hewlett, to whom the premises, on September 22, 1880, had been sold at a sale under a judgment entered in an action brought by him to foreclose the mortgage, to which action the present plaintiff was not made a party. The deed from the referee having, on December 17, 1880, been recorded in the register's office, the premises were thereafter conveyed by Hewlett to the defendant Schwannecke for the consideration of $2,500, $2,000 of which was secured by a mortgage upon the premises.

The plaintiff claimed to be entitled to redeem under a deed from Decker, executed on July 25, 1878, but not recorded until March 15, 1881, the action of foreclosure having been commenced on July 26, 1880, and a notice of the pendency of such action having been filed in the office of the clerk of the city and county of New York on July 16, 1880. From the evidence given upon the trial the court found as a fact that the plaintiff Hewlett had actual and express notice of this deed at and before the time of the commencement of the action.

*Held*, that, even if this notice were established, it would not affect the defendant Schwannecke, who was, to the extent of the $500 (which it was to be presumed from the recitals in the deed he had paid), to be treated as a purchaser in good faith.

That the defendant Schwannecke's right to be treated as a *bone fide* purchaser was not affected by the fact that Hewlett did not acquire title by a direct conveyance from Decker, as the effect of the foreclosure and sale was precisely the same as though Decker had executed and delivered a deed of the premises to him.

That it did not follow from this result that the plaintiff would be deprived of all remedy, if the action could be legally maintained in other respects, as the defendant Hewlett might still be required to account for what he had received upon the sale and conveyance of the property, and in that manner the plaintiff might secure an equitable adjustment of her rights.

That in order to avoid the effect given to the filing of the *lis pendens* by section 132 of the Code of Procedure, which was applicable to the filing of the notice in the action of foreclosure, it must be shown that Hewlett, the plaintiff therein, had notice, at or before the time of its commencement, of the existence of the deed to the plaintiff. That proof of this fact would probably defeat the judgment in the foreclosure suit, so far as to render it inoperative against the present plaintiff, as it would have been a fraud on Hewlett's part to foreclose his mortgage and sell the property without making the plaintiff a party to the action if he, in fact, knew her to be the owner of the equity of redemption.

That as there was no evidence to prove that Hewlett himself had any notice or information of the existence of the deed from Decker, the finding that he had such notice could only be supported by a finding that he was affected with notice of the existence of the deed, from information given concerning it to his attorneys, who had loaned the money which the mortgage was given to secure, and had acted as his attorney in the action brought to foreclose it.

That the evidence given in this case was not sufficient to sustain such a finding, as it did not show that the information or knowledge of the attorney was acquired while engaged in the business of Hewlett, or that the information, however acquired, was retained by the attorneys down to the time of the commencement of the action of foreclosure and was then present in their minds.

*Holden* v. *N. Y. and Erie Bank* (72 N. Y. 286) distinguished.

APPEAL from an interlocutory judgment recovered at the Special Term.

*Abner C. Thomas*, for the appellants.

*James C. De LaMare*, for the respondent.

DANIELS, J.:

By the judgment which has been recovered the plaintiff is entitled to redeem premises situated on the easterly side of Jackson

avenue in the city of New York, from a mortgage executed by Clara Decker and Peter P. Decker, her husband, to secure the sum of $2,000, with interest from the 13th of December, 1877. This mortgage was foreclosed by George Hewlett, the mortgagee, in the year 1880. Under the judgment in the foreclosure suit the premises were sold on the 22d of September, 1880, and the plaintiff Hewlett, in the action, became their purchaser, and a deed was executed and delivered to him on the twenty-eighth of the following October, and recorded in the register's office of the county of New York, on the 17th of December, 1880. He held the title under this purchase, until the 4th of February, 1881, when he conveyed the property to the defendant Schwannecke, for the consideration of $2,500, $2,000 of which was secured by a mortgage on the same premises, executed by the vendee to the vendor. The deed from Decker and wife to the plaintiff was executed on or about the 25th of July, 1878, but it was not recorded until the 15th of March, 1881, while the action of foreclosure of the mortgage held by the defendant Hewlett, was commenced on or about the 26th of July, 1880, and a notice of the pendency of the action was filed in the office of the clerk of the city and county of New York on the 16th of July, 1880. And it was because of the fact that the deed to the plaintiff was not on record at the time when the foreclosure action was commenced, that she was not made a party to the foreclosure suit. But to remove the effect of the omission to record the deed to the plaintiff, evidence was given from which the court found as a fact, that the plaintiff Hewlett, in the foreclosure suit, had actual and express notice of this deed, at and before the time of the commencement of that action. But if this notice was established as a fact in the case, it did not affect the defendant Schwannecke, for there is no pretense that he had any information whatever of this pre-existing deed to the plaintiff in this action. And as it is to be presumed, from the recital in the deed to him, that the sum of $500 was actually paid, as a part consideration for the sale of the property, in addition to the execution and delivery by him of the mortgage to secure the residue of the purchase-price, he was so far a purchaser of the property in good faith, for value, for this recital in the deed was evidence of the payment by him of so

much of the purchase price. (*Lacustrine Fertilizer Co.* v. *Lake Guano, etc., Co.*, 82 N. Y., 476, 483.)

This position has, however, been denied by the counsel for the plaintiff, for the reason that Hewlett did not acquire title by a direct conveyance from Decker. But the effect of the foreclosure and sale was precisely the same as though Decker had executed and delivered a deed of the premises to Hewlett. For it was provided by the statute both preceding and at the time when the sale was made and which has become a part of the Code of Civil Procedure, that the deed upon the foreclosure sale should vest in the purchaser the same estate, as if it were executed by the mortgagor and mortgagee of the property. (3 R. S. [6th ed.] 199, § 102; Code § 1632.) And neither of the authorities brought to the attention of the court by the counsel for the plaintiff, hold anything in conflict with this conclusion. For while it has been held that the recording act will affect conveyances founded only on a purchase of the right of the mortgagor, this conveyance was strictly within that principlet To entitle it to the protection of the recording act it was no. necessary that the deed of the property should be executed by Decker himself. It was sufficient that the conveyance executed by the referee was equivalent to a deed executed by him, and designed to convey his title, which under these provisions of the statute it actually did. What the rule of construction requires, which these authorities have stated and settled, is that the conveyance shall be operative and effectual in the way of conveying the title of the person appearing upon the record to be the owner of the property. (*Raynor* v. *Wilson*, 6 Hill, 469, 473; *Wood* v. *Chapin*, 3 Kern., 509, 520; *Gillig* v. *Maass*, 28 N. Y., 191, 209.) And its application to this conveyance is confirmed by *Seward* v. *Huntington* (94 N. Y., 104, 114), and its force in that respect is in no way diminished by anything that was said in *Tarbell* v. *West* (86 N. Y., 280, 288). As to this defendant, therefore, the right of the plaintiff to redeem was not established. and so far the judgment certainly was unwarranted.

But it does not follow from this result that the plaintiff would be deprived of her remedy if the action has been legally maintained in other respects, for the defendant Hewlett might still be required to account to her for what he has received upon the sale and con-

veyance of the property, and in that manner to secure an equitable adjustment of her rights. (*Meehan* v. *Forrester*, 52 N. Y., 277, 281.) And an equally important inquiry is therefore presented whether the action has been maintained against the defendant, Hewlett. At the time when it was commenced section 132 of the Code of Procedure was applicable to the filing, and the effect of the filing of the notice of *lis pendens*. For by section 3356 of the Code of Civil Procedure, chapters 14 to 21, inclusive, did not go into effect until the first of September, 1880, and the like provisions, which by different sections have been made a part of this Code, are contained in chapter 14. By the preceding section contained in the Code of Procedure, requiring the filing of a notice of the pendency of the action in suits affecting the title to real property, it was provided that this should be done in foreclosure cases twenty days before judgment, and that the notice must contain a description of the property, the date of the mortgage, the parties thereto, and the time and place of recording the same. The notice which was filed complied with these requirements, and this section further provided where that shall appear to be the fact, that "from the time of filing, only, shall the pendency of the action be constructive notice to a purchaser or incumbrancer of the property affected thereby; and every person whose conveyance or incumbrance is subsequently executed, or subsequently recorded, shall be deemed a subsequent purchaser, or incumbrancer, and shall be bound by all proceedings taken after the filing of such notice, to the same extent as if he were made a party to the action." And this latter provision has been enforced and carried into effect according to the import of the language used in its enactment. (*Stern* v. *O'Connell*, 35 N. Y., 104; *Lamont* v. *Cheshire*, 65 id., 30; *Kindberg* v. *Freeman*, 39 Hun, 466.) And it was to avoid its effect that the evidence was given in this action, from which it has been found that Hewlett, the plaintiff in the foreclosure suit, had notice at or before the time when it was commenced, of the existence of this deed to the plaintiff. And if he had, that would probably defeat the judgment in the foreclosure suit, so far as to render it inoperative against the plaintiff, for it would have been a fraud on his part to foreclose his mortgage and sell the mortgaged property without making the plaintiff a party to the action, if he in fact knew her to be the owner of the

equity of redemption. And it could have been no part of the design, in the enactment of this statutory provision, to promote or sanction a fraud of this description.

But there was no evidence whatever in the case tending to prove that Hewlett himself had any notice or information of the existence of the deed from Decker to the plaintiff. So far the finding that he had actual and express notice was without foundation in the evidence. But what the court undoubtedly designed to find as a fact was that Hewlett had become affected with notice of the existence of the deed, from information given concerning it to his attorneys, C. & N. D. Lawton. They had loaned the money for the plaintiff for which the mortgage was taken from Decker. This loan was made on or about the 13th of December in the year 1877. And after the making of the loan the bond and mortgage remained in the possession of the attorneys, who collected the interest and looked after the property for the defendant Hewlett. And in September, 1878, the husband of the plaintiff testified that he informed the Lawtons of the fact that the plaintiff had a deed of these premises. Their evidence, as well as the evidence of a clerk in their office, was in conflict with the testimony of this witness. But under the rule laid down in *Sherwood* v. *Hauser* (94 N. Y. 626), the finding of the court on this conflict of evidence cannot be interfered with. And it may be added that there are probably few cases under that rule, in which the court will not be precluded by a finding of fact, either by a referee or the court, where there is a conflict of evidence, from reviewing the conclusion, although it may strongly preponderate, as it does in this case, in favor of the defendant.

The only point open for consideration, therefore, is whether the evidence, as it may be most favorably construed for the plaintiff, established the fact that notice of this deed was given to the attorneys in such a manner as to become binding upon Hewlett the mortgagee. The evidence to prove notice was wholly derived from the testimony of her husband, and that was that in September, 1878, he had a conversation with N. D. Lawton, which was afterwards continued and completed in the presence and with the participation of Cyrus Lawton. His testimony was: " I went there in regard to the abstract of title. Q. Abstract of title of what?

A. Of this Jackson avenue house. Q. You went where? A. To Mr. Lawton's office. Q. Tell us all that was said? A. I showed him the contract I had with Mr. Peter Decker in reference to that house and other matters; I then stated that my wife had the deed. Q. What else? A. He took the contract and brought it out to the elder Mr. Lawton. * * * They stated that was Mr. Peter Decker's writing and signature, and they asked me if I was Mr. John Slattery; I said no, that I was P. H. Slattery; that is all I remember of that interview. Q. Was there something said about an abstract? A. Yes, sir; I said I went there for the abstract and they referred me over to a gentleman named Runk in Broadway; Charles Runk the name is. Q. In stating to them that you were after an abstract, what, if anything, did you say about the deed? A. I told him my wife had a deed of that property; I took the deed from Mr. Peter Decker for my wife. Q. And your wife is Margaret Slattery, the plaintiff in this case? A. Yes. Q. After that did you call there again? A. Yes; I called some time after in regard to the abstract; I saw the elder Mr. Lawton. Q. Mr. Cyrus Lawton? A. Yes; that was a month or two after; then he stated there was some gentleman in the same building with him who had the abstract and he would get me a copy; he would give me a copy for five dollars. Q. Did you call there a third time? A. I did, in 1879. Q. Who did you see there? A. I saw the younger Mr. Lawton. Q. Mr. N. D. Lawton? A. Yes. Q. Did you say anything about the deed at that time? A. I did. Q. What did you say to him? A. The first conversation I had with him I told him that my wife was anxious to have the house completed, and as he was acting for Mr. Hewlett I asked him if it was customary to advance something of the mortgage before the house was fully completed; I told him my wife was anxious to have the house finished up; he then acted angry, and stated he had commenced a foreclosure; that was the last interview I had with him except when I tendered the money. Q. After that did you call with Mr. Brown and make any tender there? A. Yes, sir. Q. Whom did you see? A. I saw the young gentleman. Q. Mr. N. D. Lawton? A. Yes, sir. Q. What took place? A. I asked him if he would take the money, if he represented Hewlett; he said yes he was acting for Mr. Hewlett. * * * Q. Tell us what took place? A. He refused to take

it. * * * Q. Can you fix the day? A. I think it was May 3, 1881, between one and two o'clock, or twelve and one o'clock."

When the foreclosure suit was commenced John Slattery was made a defendant, and there was added to his name in the title "and —— Slattery, his wife." But this latter name was stricken out of the case upon the fact being discovered by one of the attorneys that John Slattery had no wife. This addition to the title, accordingly, as it was not intended to include the plaintiff, in no way increased the weight of the evidence given to prove notice of the outstanding deed. It rather rebutted the fact of information being given to the attorneys of that deed, for it indicated their understanding to be that John Slattery, and not the plaintiff, was the person who had acquired some interest in the mortgaged property. The important inquiry in the case, accordingly, is whether this evidence of Patrick H. Slattery, assuming it to have accurately stated what had transpired between himself and the attorneys, established such a notice of the deed to his wife as became binding upon Hewlett, the plaintiff in the foreclosure suit. It is evident from the testimony, as it has been given from the case, that the witness did not repair to, and was not present in, the office of the attorneys upon any business of Mr. Hewlett. Neither were the attorneys at the time he was there on either of the interviews, except the last, engaged in any business or transaction for Hewlett, and in the last interview nothing appears to have been said concerning the deed, and if it had been made the subject of conversation it would not have been important, as the rights of these parties had previous to that time become fixed and settled. In the first two interviews the witness was at the office on his own business, to obtain an abstract of the title. In the third his object was equally that of his own business, to make inquiries concerning the completion of the house, and what he stated to the attorneys concerning the deed to his wife was no more than incidental remarks made in the course of the two interviews relating to his effort to obtain the abstract, and that under the rule applicable to notice affecting the principal, by information acquired by his agent, was not sufficient to prove notice to Hewlett himself. For that purpose the law has required that the information or knowledge of the agent shall be acquired by him in the business of his principal.

This was held in *Weisser* v. *Denison* (10 N. Y. 68), where it was said that "the principle that notice to an agent is notice to the principal is quite familiar, but is only applicable to cases in which the agent is acting in the course of his employment. Were it otherwise, and did it extend to acts unauthorized and outside of the employment, whether trespasses or even felonies, the master might be made responsible for all acts, whether tortious or otherwise, done by his servant while in his employ or acting professedly in his behalf, if he did not act at once by disclaiming the authority" (Id. 77). And this was approved in *Welsh* v. *German Bank* (73 N. Y., 424, 429), and in *Bennett* v. *Buchan* (76 id., 386). The evidence of this witness tended to prove no such notice, inasmuch as the attorneys were not in either of these interviews acting for, or engaged in the business of, Hewlett, but were responding to inquiries made by the witness in his own business or that of his wife.

Still if the information stated to have been given concerning the existence of the deed had been in the minds of the attorneys as a fact at the time of the commencement or during the progress of the foreclosure suit, that would have affected Hewlett, under the authority of the case of *Holden* v. *N. Y. and Erie Bank* (72 N. Y. 286), for there it was held when the bank acted ·by its president having such knowledge it was bound by it, no matter how it might have previously been acquired. And this result was considered to follow "because when it acted through him as president in any transaction where that knowledge was material and applicable, it acted through an agent who at that very time had a knowledge of facts which gave a character to the transaction as fair and justifiable, or the reverse, and whose duty it was to make that knowledge known to his principal." (Id. 294, 295.) But in the present case there was no further evidence of the fact that this information or knowledge was retained by the attorneys down to the time of the commencement of the foreclosure suit, than the inference arising out of the evidence of this witness, that late in 1878 he had informed the attorneys of the existence of this deed. This, however, is simply an inference, and its existence is not compatible either with the evidence or the conduct of the attorneys themselves, who very clearly had no reason for omitting to make the plaintiff a

party defendant to the foreclosure suit if they understood her to be the owner of any interest in the property affected by the mortgage. Their interest was in fact the other way. It was to bring into the action all persons having or claiming to have an interest in the property mortgaged, and in that manner to secure a complete and effectual title through the foreclosure. The omission of the plaintiff as a party could be attended with no possible advantage to the plaintiff in the foreclosure suit, or to his attorneys, for her deed, even if it had been recorded at the time when it was given, was subsequent and subject to the mortgage.

There could have been no reason for omitting to make her a defendant in the action if the attorneys had at the time of its commencement any impression, or knowledge, of the fact that she had acquired the title of the mortgagor. And that they designed to include in the action the grantee of Decker is made to appear by the circumstance that John Slattery was in fact made a defendant in the suit, and it was proved by Patrick H. Slattery, the witness, that he was carrying on business in the name of John Slattery and represented him in its transactions. And that may very well have led to the conclusion that John Slattery was the person to whom Decker had conveyed his interest. The change in the policies of insurance made at their instance indicate the like impression to have existed in the minds of the attorneys, for in January, 1879, an indorsement was made in the policy, stating it to be understood that John Slattery was the owner of the property, and in the insurances afterwards effected a similar statement was repeated, and it was to include and cut off that interest that John Slattery was made a defendant in the action. How the information was acquired that John Slattery had become interested in this property no otherwise appeared than by the statement of the witness, N. D. Lawton, that they understood from Mr. Decker that he was the owner. But this was stricken from the case on motion of the plaintiff, and to that ruling the defendant excepted, and properly so, too, for they had the right, in fact, to show what information they had acquired before the commencement of the action concerning the ownership of the equity of redemption.

But it is quite apparent from the conduct of the attorneys that they did not have the impression that any other person than John

Slattery had become interested in the property, after the execution of the mortgage to Hewlett, and for that reason he could not be charged with the information previously given to them by Patrick H. Slattery, disclosing the existence of this deed. The information seems to have passed out of their minds, and that fact distinguishes this case from that of *Holden* v. *New York and Erie Bank* (*supra*), and the positive testimony of the attorneys themselves, clearly asserted the absence of this information or knowledge, at the time when they commenced the action to foreclose the mortgage. As the case was presented, therefore, there was no such evidence adduced upon the trial as charged the defendant, Hewlett, with notice of the existence of the deed to the plaintiff. And without that notice she was, under this section of the Code of Procedure, bound by all the proceedings taken in the action the same as if she had been made a party to it, and the judgment in this action should be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., and BARTLETT, J., concurred,

Judgment reversed, new trial ordered, costs to abide event.